JOHN MURRAY *et al.* v. JOHN W. DAVIES.

No. 15,174.     (94 Pac. 283.)

1. SALES—*Fraud—Rescission of Contract—Recovery of Payment.* The evidence showed that plaintiff was induced to make a payment on a contract to purchase land by the fraudulent representations of defendants, and he was therefore entitled to rescind the contract and recover the amount paid.

2. ——— *Knowledge that Representations Are False—Waiver of Right to Rescind.* It was said parties cannot be relieved from the consequences of false representations, made with the intent to deceive, and upon which the other party relied, by showing that such other party had an opportunity to learn the truth.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed February 8, 1908. Affirmed.

*B. P. Waggener,* and *Henry Elliston,* for plaintiffs in error.

*W. W. Guthrie, W. F. Guthrie, C. D. Walker,* and *J. L. Berry,* for defendant in error.

*Per Curiam:* This is an action by John W. Davies against John Murray and Hoyt & Secrest, a real-estate firm composed of J. C. Hoyt and Frank Secrest, to recover the value of cattle alleged to have been obtained by defendants from Davies in Atchison county by fraudulent representations. The cattle, of the value of $4500, were turned over to defendants as the first payment on two sections of land in Butler county which Hoyt contracted to sell to Davies. There was to be a second payment, on or before the March following, of $5430, and the balance, $5430, was to be paid within three years.

The petition alleged, and there was testimony sufficient to show, that defendants represented to Davies that Hoyt was the owner of the land which he contracted to sell, and also of a great many other tracts of land in Butler county, and that he was financially interested in all the banks of El Dorado and was fully responsible for the performance of his contract. After the contract had been made, but before all the cattle were taken away, Davies was led to question the security he had for the performance of the contract, and went with defendants to the office of an attorney, who advised Davies that he had no more than the personal responsibility and honor of the defendants as to Hoyt's ability to carry out the contract. The defendants then agreed to furnish the attorney abstracts and make such provisions as would satisfy the attorney as to the ownership of the land and the protection of Davies. Some days afterward they returned to Davies's home and

stated that they had furnished the required documents and satisfied the requirements of the attorney, and upon these statements they obtained the delivery of the cattle. The statement that they had satisfied the attorney was untrue. The representations that Hoyt was the owner of the land which he undertook to sell were false. There was no truth in the representation that he owned other lands in that county, nor in the representation that he was financially interested in all of the banks of El Dorado. There was considerable correspondence and negotiation between the parties regarding the furnishing of abstracts and the closing up of the transaction. Quite a number of persons owned the land in question, some of whom were non-residents. The title to some of it was in the state and held only under a school-land certificate. Part of it was held under a tax title. Some was encumbered by mortgages, and part held under a long-time lease. Although defendants made some efforts to acquire the land, or the right to sell it, they never at any time were in a position to transfer a clear title to Davies. However, the action was not for specific performance, but the question was whether the cattle were obtained from Davies by fraudulent representations upon which he relied, and this was abundantly shown.

Having been induced to part with his property through the fraud of the defendants, he was entitled to rescind and recover the value of the cattle so fraudulently obtained. But it is said that the right to rescind was waived by the conduct of Davies in continuing to negotiate and to demand the closing up of the transaction after learning that the representations were false. Davies had suspicions, and learned that some of the facts had not been correctly represented by defendants, but, although he did try to obtain abstracts and pushed the inquiry as to whether Hoyt had the right to convey, it does not appear that he acquired full knowledge as to the ownership of the land or as to the financial respon-

sibility of Hoyt until he repudiated the contract. 'There can be no ratification without knowledge, and parties cannot be relieved from the consequence of false representations, made with the intent to deceive and upon which the other party relied, by the mere showing that such other party had an opportunity to learn the truth. Nothing in the efforts of Davies to close up the transaction, nor in the proposition to adjust the matter, operated as a ratification of the fraudulent contract. There was no such delay or misleading conduct as will bar him from recovering the value of the property fraudulently taken from him.

There is nothing substantial in the objections to the findings or the instruction which was criticized. The judgment is affirmed.